2016 IL App (1st) 131274

SIXTH DIVISION
April 8, 2016

Nos. 1-13-1274, 1-13-1331 & 1-13-3131 Cons.

| | | |
|---|---|---|
| LINDA S. KAGAN, on Behalf of Herself and All Persons Similarly Situated, and ELLIOT SAMUELS, Trustee of the Abe Samuels Trust and Executor of the Estate of Diane Samuels and on Behalf of Himself and All Persons Similarly Situated, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | Nos. 11 CH 22722 & 11 CH 23177 Cons. |
| v. | ) ) | |
| WALDHEIM CEMETERY COMPANY, ROSEMONT PARK, INC., and DAVID GALE, | ) ) ) | Honorable Rodolfo Garcia, Judge Presiding. |
| Defendants | ) ) | |
| (Zion Gardens, Inc., Defendant-Appellant; Bank of America, N.A., Successor to LaSalle Bank, N.A., Defendant-Appellee). | ) ) ) ) | |

_____

| | | |
|---|---|---|
| ZION GARDENS, INC., | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 11 CH 33936 |
| BANK OF AMERICA, N.A., Successor to LaSalle Bank, N.A., | ) ) ) | Honorable Rodolfo Garcia, Judge Presiding. |
| Defendant-Appellee. | ) | |

JUSTICE HALL delivered the judgment of the court, with opinion.

Justices Hoffman and Delort concurred in the judgment and opinion.

**OPINION**

¶ 1      The plaintiffs, Linda S. Kagan and Elliot Samuels (the plaintiffs), appeal from an order of the circuit court of Cook County dismissing their second amended consolidated complaint against the defendants, Bank of America (the Bank), Waldheim Cemetery Company (Waldheim), Zion Gardens, Inc. (Zion), Rosemont Park, Inc. (Rosemont), and David Gale. Zion filed separate appeals from the order dismissing the second amended consolidated complaint and from the dismissal of its separate amended complaint against the Bank.

¶ 2      On appeal, the plaintiffs contend that: (1) they stated a claim for breach of common law fiduciary duty against the Bank; (2) a private right of action exists under the Cemetery Care Act giving them standing to sue the Bank; (3) the circuit court abused its discretion when it denied them leave to amend their second amended consolidated complaint; and (4) they adequately pleaded a claim for violation of section 2Z of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2Z (West 2012)).

¶ 3      In its separate appeal from the dismissal of the second amended consolidated complaint, Zion seeks reversal of the dismissal order insofar as it rested on a finding (1) that the beneficiaries of a cemetery care trust lacked standing to sue an independent trustee they alleged was responsible for their injury or (2) a finding that the lien provision of the Cemetery Care Act (760 ILCS 100/1 *et seq*. (West 2012)) was relevant to the issue of standing, or could exonerate the Bank.

¶ 4      In its appeal from the dismissal of its amended complaint against the Bank, Zion contends that Zion had standing to seek redress against the Bank for the benefit of the grave owners and the general public as well as itself.

¶ 5    On the parties' motion, we consolidated the three appeals for review. For reasons that follow, we affirm in part and reverse in part the orders of the circuit court.

¶ 6                                    BACKGROUND

¶ 7    The litigation in these cases centered on provisions of the Cemetery Care Act (Care Act) (760 ILCS 100/1 *et seq.* (West 2012)).[1] The Care Act was enacted to remedy the evils relating to possible frauds or mismanagement in the handling of care funds and in the advertising and sales of services to which the funds for care were to be devoted. *Union Cemetery Ass'n of the City of Lincoln, Illinois v. Cooper*, 414 Ill. 23, 34 (1953).

¶ 8    A cemetery licensed under the Care Act must establish a care fund into which deposits of the funds collected from the purchasers of cemetery property and services are placed and must hold the funds in trust. *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 179 (1995); 760 ILCS 100/4 (West 2012). The cemetery authority may act as trustee of up to $500,000 in care funds, but it must retain an independent trustee for any amount over $500,000. "The net income only from the investment of [special] care funds shall be allocated and used for the purposes specified in the transaction by which the principal was established in the proportion that each contribution bears to the entire sum invested." 760 ILCS 100/3 (West 2012).

¶ 9    In 2000, when the care funds exceeded $500,000, David Gail, vice-president of Rosemont, entered into a trust agreement with LaSalle Bank. Rosemont was named the settlor of the trust, and LaSalle was named the trustee of the trust into which the care funds were deposited. Subsequently, the Bank became the trustee when it acquired LaSalle Bank. Pertinent parts of the trust agreement provided as follows:

---

[1] The complaints also alleged claims under the Illinois Cemetery Oversight Act (225 ILCS 411/5-1 *et seq.* (West 2012)), but those claims are not raised in this appeal.

"3. This trust is established by Rosemont, as Settlor, which owns and operates Rosemont Cemetery (hereinafter the "Cemetery"), for the purpose of managing funds received and to be invested to provide income for future care services to be provided by Cemetery in accordance with the Care Act and the terms hereof shall be construed accordingly.

* * *

5.2 All moneys transmitted by Settlor under this Trust Agreement shall be held in trust by Trustee as to principal and shall be invested in the manner required by the Cemetery Care Act.

* * *

5.4 Settlor covenants and agrees to use the income received from this Trust Fund for the care, landscaping and maintenance service provided for in the Cemetery Care Act to the extent of the income received.

* * *

6.10 Trustee shall be entitled to rely absolutely upon the truth of the recitals of fact contained in deposit memorandums and documents required to be presented to it under the terms of this Trust Agreement, and upon accounting information furnished by Settlor and shall be fully protected and absolved from all liability in so doing; and Trustee shall not in any way be responsible or liable of the proper application of any amounts so paid by it or upon the direction of Settlor pursuant to any such documentation.

7.1 In administering this trust, Trustee shall have the express powers enumerated herein, together with all the powers conferred by law upon trustees in the Cemetery

Care Act and to the extent not covered then powers conferred by law upon trustees generally in Illinois Statutes. In addition to, and not in limitation of the powers vested and to be vested in it by law or enumerated in this Trust Agreement, Trustee shall have the power to take any action with respect to the Trust Assets as is appropriate in carrying out the purposes of this Trust Agreement. Trustee may exercise these powers at any time and from time to time in any valid manner without a court order."

¶ 10    In 2005, plaintiff Kagan paid $1,300 to Rosemont for perpetual care of a gravesite. In 1990 and 2006, respectively, plaintiff Samuels paid $41,493.78 and $4,291, to Rosemont for perpetual care of multiple gravesites.

¶ 11    Beginning in 2005, Rosemont began to transfer funds from the trust account in such amounts that by 2009, the principal of the trust was completely depleted, and the cemetery was in a severe state of neglect. Under the Care Act, Rosemont was required to submit an annual accounting of all care funds to the Illinois Comptroller (the Comptroller). 760 ILCS 100/12 (West 2012). Rosemont failed to file reports in 2005 through 2008 but requested and received a filing extension for each of those years. In 2009, the Comptroller served Rosemont with a notice of audit and an opportunity to respond. Rosemont submitted documentation to the Comptroller confirming that it had withdrawn and spent nearly the entire principal of the trust to operate the cemeteries under its control.[2]

¶ 12    In 2011, Rosemont entered into an agreement with Waldheim whereby, for the sum of $10, Waldheim would purchase and operate Rosemont's cemeteries. Waldheim created a subsidiary, Zion, to operate the Rosemont cemeteries. As a condition of obtaining a license to

---

[2] Besides Rosemont Park, Rosemont operated several other cemeteries in the area.

5

operate the cemeteries, Zion agreed to replenish the depleted trust principal. Subsequently, Zion sent a letter to the holders of perpetual-care contracts informing them that those contracts were no longer valid.

¶ 13                                   CIRCUIT COURT PROCEEDINGS

¶ 14                                   The Kagan and Samuels Complaints

¶ 15        In June 2011, plaintiff Kagan and plaintiff Samuels filed separate class action complaints against the defendants.  Both complaints sought redress for themselves and others who purchased extended-care services from Rosemont.  On August 23, 2011, following the circuit court's consolidation of the Kagan and Samuels complaints, an amended consolidated complaint was filed against the Bank, Zion[3] and the other named defendants alleging conversion, common law breach of fiduciary duty, violations of the Illinois Cemetery Oversight Act and the Care Act and violation of the Consumer Fraud Act. They also sought an accounting.

¶ 16        The Bank filed a combined motion to dismiss the amended consolidated complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)), the Bank moved to dismiss the amended consolidated complaint. The circuit court granted the Bank's motion to dismiss in part finding that under section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)), the plaintiffs failed to state causes of action for conversion and common law breach of fiduciary duty.  The plaintiffs were granted leave to replead the dismissed conversion and common law breach of fiduciary duty counts.

¶ 17        The plaintiffs filed their second amended consolidated complaint, repleading the conversion and common law breach of fiduciary duty claims solely to preserve them for

---

[3] The Bank and Zion are the only party-defendants involved in these appeals.

appeal. While the circuit court had not dismissed the consumer fraud count, the plaintiffs added the term "knowingly" to their claim of consumer fraud. Pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)), the Bank moved to dismiss the second amended consolidated complaint. On April 10, 2013, the circuit court granted the Bank's motion and dismissed the second amended consolidated complaint with prejudice.

¶ 18                             Zion's Complaint Against the Bank

¶ 19        In September 2011, Zion filed a separate lawsuit against the Bank alleging multiple causes of action including, *inter alia*, illegal withholding of funds, breach of the trust agreement, and violation of the Care Act. Pursuant to section 2-619.1 of the Code, the Bank moved to dismiss Zion's complaint. The court dismissed the counts alleging illegal withholding of funds, breach of the trust agreement and violation of the Care Act under section 2-615, and Zion was granted leave to amend those counts.

¶ 20        Zion filed an amended complaint. Count I alleged an equitable cause of action against the Bank based on the violations of the trust agreement, the Care Act, the Trusts and Trustees Act (760 ILCS 5/1 *et seq.* (West 2012)), breaches of common law duties owed by a trustee, fraud and collusion with Rosemont and sought a finding of malice and an award of punitive damages. Count II sought a declaratory judgment that (1) Zion had standing to maintain its action on behalf of itself, the care fund trust, the owners of the lots and gravesites and on behalf of the general public and (2) the Bank was a fiduciary of the beneficiaries of the trust, which included Rosemont, the owners of the lots and grave sites and the general public. For purposes of appeal, count III realleged Zion's claim that the Bank illegally withheld funds, which the circuit court had dismissed previously as moot.

¶ 21     The Bank moved to dismiss the amended complaint pursuant to section 2-619.1 of the Code. On September 26, 2013, the circuit court dismissed Zion's amended complaint against the Bank with prejudice.[4]

¶ 22     These three appeals followed.

¶ 23                                    ANALYSIS

¶ 24              I. Dismissal of the Plaintiffs' Second Amended Consolidated Complaint

¶ 25                               A. Standards of Review

¶ 26     Dismissal pursuant to section 2-615 is reviewed *de novo*. *Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 325 (2008). Construction of a statute presents a question of law which the court also reviews *de novo*. See *Majid v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 2015 IL App (1st) 132182, ¶ 13.

¶ 27                                  B. Discussion

¶ 28     The plaintiffs contend that the dismissal of the second amended consolidated complaint against the Bank was error. They maintain that, for purposes of section 2-615 of the Code, they sufficiently alleged causes of action against the Bank for breach of its fiduciary duty to them, both under common law and the Care Act and for violation of the Consumer Fraud Act. In its appeal from the dismissal of the second amended consolidated complaint, Zion contends that the circuit court erred in determining that beneficiaries of a cemetery care trust lack standing to sue and that section 15b of the Care Act, providing that a shortage in the care fund created a lien in favor of the trust, supported the finding that the Care Act did not bar the withdrawal of the principal from the care fund trust. 760 ILCS 100/15b (West 2012).

---

[4] In dismissing the complaint with prejudice, the circuit court considered arguments under both section 2-615 and section 2-619. It is unclear from the record whether the dismissal was based on either or both of those sections.

¶ 29    The plaintiffs' second amended consolidated complaint against the Bank was dismissed under section 2-615 of the Code. "A section 2-615 motion to dismiss attacks the legal sufficiency of the complaint based upon defects appearing on the face of the complaint." *Compton*, 382 Ill. App. 3d at 325-26. All well-pleaded facts and all reasonable inferences from those facts are taken as true. Where unsupported by allegations of fact, legal and factual conclusions may be disregarded. *Compton*, 382 Ill. App. 3d at 326. In determining whether the allegations of the complaint are sufficient to state a cause of action, the court views the allegations of the complaint in the light most favorable to the plaintiff. *Compton*, 382 Ill. App. 3d at 326. Unless it is clearly apparent that the plaintiff could prove no set of facts that would entitle him to relief, a complaint should not be dismissed. *Compton*, 382 Ill. App. 3d at 326.

¶ 30                    1. *Breach of Fiduciary Duty Under Common Law*

¶ 31    A trustee owes a fiduciary duty to the beneficiaries of a trust and must carry out the trust according to its terms and to act with the highest degree of fidelity and good faith. *Herlehy v. Marie V. Bistersky Trust*, 407 Ill. App. 3d 878, 896 (2010). "To state a cause of action for breach of a fiduciary duty, a plaintiff must allege and ultimately prove: (1) a fiduciary duty on the part of the defendant; (2) a breach of that duty; (3) damages; and (4) a proximate cause between the breach and the damages." *Herlehy*, 407 Ill. App. 3d at 896. The plaintiff's allegations must be supported by facts. *Chicago City Bank & Trust Co. v. Lesman*, 186 Ill. App. 3d 697, 701 (1989). A breach of the trust agreement by the trustee renders the trustee liable for any loss to the estate as a result of the breach, and the beneficiaries must be placed in the position they would have held but for the breach. *Grot v. First Bank of Schaumburg*, 292 Ill. App. 3d 88, 91-92 (1997).

¶ 32       The plaintiffs' common law breach of fiduciary duty claim against the Bank alleged as follows:

"62. As trustees of Plaintiff's and the Class's perpetual-care monies, defendants assumed fiduciary duties and responsibilities for those funds.

63. In addition or in the alternative, defendants Bank of America, Rosemont Park, Inc. and [David] Gail were fiduciaries of the plaintiffs and the Class with respect to all principal amounts in the perpetual-care trusts.

64. By allowing the principal of the perpetual-care funds in trust to be depleted, defendants breached their fiduciary duties to the Plaintiffs and Class. This breach of duty also violated the Oversight and Care Acts which required defendants to act in the manner that a person of 'prudence, discretion and intelligence' would 'exercise in the management of their own affairs.'

65. Defendants are therefore liable to Plaintiffs and the Class for the principal amounts depleted in the perpetual-care fund."

¶ 33       The plaintiffs did not allege any facts tending to prove a fiduciary duty owed to them by the Bank. They did not allege that they were parties to or beneficiaries of a trust agreement. The plaintiffs' legal conclusion that the Bank assumed fiduciary duties to them because the Bank was the trustee of the care funds is contradicted by the facts the plaintiffs do allege. In their second amended consolidated complaint, the plaintiffs stated that, pursuant to a contract with Rosemont, the care funds were paid to Rosemont for the perpetual care for their gravesites. By the terms of the trust agreement, the funds were held for the benefit of Rosemont to enable it to provide perpetual care for the gravesites. Therefore, the allegation that care funds were held in trust for the plaintiffs is not supported by the facts.

¶ 34    The plaintiffs point out that the trust agreement incorporated the Care Act and under the Care Act, the plaintiffs and the class were beneficiaries of the trust agreement.  However, as set forth in the trust agreement, Rosemont set up the trust in order to comply with the provision of the Care Act governing Rosemont's duties with respect to the care funds it received from the sale of the perpetual-care contracts.  See 760 ILCS 100/3 (West 2012). The portions of the trust agreement relied on by the plaintiffs relate to the division of responsibilities between Rosemont, as the settlor, and the Bank, as the trustee, in management of the care funds.  Nothing in the trust agreement supports the plaintiffs' argument that the care funds were being held for the benefit of the plaintiffs as opposed to being held to enable Rosemont to continue to provide perpetual care for the gravesites.

¶ 35    Moreover, the plaintiffs' damages claim lacked a factual basis. In the second amended consolidated complaint, the plaintiffs alleged the Bank was liable to them for "the principal amounts depleted in the perpetual-care fund." It is undisputed that as a condition of obtaining a license to operate Rosemont's cemeteries, Zion agreed to replenish the depleted trust principal. Therefore, the plaintiffs were in the same position they would have been if the alleged breach had not occurred.

¶ 36    Finally, the plaintiffs maintain that the Care Act did not abolish the common law duties owed by the Bank as a trustee, relying on *Rush University Medical Center v. Sessions*, 2012 IL 112906.  In *Sessions*, the supreme court held that common law rights and remedies are not abrogated by the legislature unless plainly and clearly stated, and there is no presumption as to the abrogation of common law rights and remedies where the language is ambiguous or questionable. See *Sessions*, 2012 IL 112906, ¶ 16.  Our decision in this case rests on the

plaintiffs' failure to state a cause of action for a breach of fiduciary duty by a trustee under common law, not on the ground that the Care Act abrogated such a cause of action.

¶ 37      Since the second amended consolidated complaint failed to allege facts that, if taken as true, would ultimately prove that the Bank owed a fiduciary duty to the plaintiffs, the plaintiffs did not state a cause of action against the Bank for breach of fiduciary duty under common law. We conclude that the dismissal with prejudice of the plaintiffs' claim against the Bank for breach of fiduciary duty under common law was proper.

¶ 38                                         2. *Private Right of Action*

¶ 39      The plaintiffs and Zion maintain that they have standing to sue the Bank for breach of fiduciary duty and other violations of the Care Act. While acknowledging that the Care Act does not expressly provide for a private right of action, the plaintiffs and Zion contend that there is an implied private right of action under the Care Act. *Metzger v. DaRosa*, 209 Ill. 2d 30, 35 (2004) (a court may determine that a private right of action is implied in a statute). There are four factors to consider in determining if a private right of action may be implied from a statute: " '(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.' " *Metzger*, 209 Ill. 2d at 36 (quoting *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460 (1999)). Whether there is a private right of action under the Care Act presents an issue of first impression.

¶ 40    The plaintiffs and Zion maintain that they are members of the class for whose benefit the Care Act was enacted and that the Care Act was intended to remedy the injury they alleged to have suffered.  In support of their argument, they rely on several provisions of the Care Act.

¶ 41    Section 3 of the Care Act provides that "care funds *** shall be held intact" and "[t]he net income only from the investment of such care funds shall be allocated and used for the purposes specified in the transaction by which the principal was established in the proportion that each contribution bears to the entire sum invested." 760 ILCS 100/3 (West 2012). Section 4 of the Care Act states in pertinent part that "[w]henever a cemetery authority *** accepts care funds *** such cemetery authority shall execute and deliver to the person from whom [the funds are] received an instrument in writing which shall specifically state: (a) the nature and extent of the care to be furnished, and (b) that such care shall be furnished only in so far as the net income derived from the amount deposited in trust will permit." 760 ILCS 100/4 (West 2012). Section 5 provides in pertinent part that while a cemetery authority may not advertise or contract to provide perpetual care, a cemetery authority may advertise or contract that "care will be furnished from the net income only derived from funds held in trust as provided in Section 3 of this Act." 760 ILCS 100/5 (West 2012). Section 6 states in pertinent part that "[t]he trust funds authorized by Section 3 of this Act, and the income therefrom *** shall be held for the general benefit of the lot owners and are exempt from taxation."  760 ILCS 100/6 (West 2012).

¶ 42    We agree with the plaintiffs that they satisfy the first two factors. *Union Cemetery Ass'n of the City of Lincoln*, 414 Ill. at 34 (the Care Act was enacted to remedy the evils relating to possible frauds or mismanagement in the handling of care funds and in the advertising and sales of services to which the funds for care were to be devoted).   Under section 5 of the

Care Act, a cemetery authority is not permitted to advertise or contract for perpetual care, but may enter into a contract with a party for gravesite care to be furnished only from the net income of the principal amount paid for the care. 760 ILCS 100/5 (West 2012). The plaintiffs entered into such contracts with Rosemont and therefore, are members of the class for whose benefit the statute was enacted. See *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 686 (2010) (the statute's policy provision specifically referenced protecting the environment for the benefit of the people living near livestock facilities). The plaintiffs alleged they were injured as a result of the mismanagement of the care funds to the point that the principal amount of the fund was completely depleted. Since this alleged mismanagement was an "evil" the Care Act was enacted to remedy, the plaintiffs have alleged an injury the Care Act was designed to prevent. *Helping Others*, 406 Ill. App. 3d at 686.

¶ 43     As to the third factor, we find that implying a private right of action is not consistent with the Care Act's underlying purpose. In order to fulfill its purpose of protecting the care funds from fraud or mismanagement, the Care Act requires a cemetery authority to obtain a license from the Comptroller before it may collect care funds from the purchasers of cemetery property and services. 760 ILCS 100/7 (West 2012). To insure that there are sufficient resources to maintain the cemetery in the future, the cemetery authority must deposit a prescribed amount of care funds into a trust to be used for that purpose. *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d at 179 (citing 760 ILCS 100/2a, 4 (West 1992)). Once licensed, a cemetery authority accepting care funds is required to file an annual report setting forth the principal amount held by the trustee of its care fund, the investments of the principal, the income received and the expenses incurred. 760 ILCS 100/12 (West 2012).

The cemetery authority must keep books and records to enable the Comptroller to ascertain whether the cemetery authority is complying with the Care Act. 760 ILCS 100/13 (West 2012). The Comptroller is not permitted to accept the surrender of a license issued under the Care Act absent satisfactory evidence of the cemetery authority's release from all trust liabilities and obligations and unless or until the care funds have been transferred to a successor licensed under the Care Act. 760 ILCS 100/15.2 (West 2012).

¶ 44 The Comptroller may revoke the license of a cemetery authority for violation of the provisions of the Care Act. 760 ILCS 100/15 (West 2012). The Care Act provides for a hearing prior to revocation of a license and for review pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)). There are felony criminal penalties for certain violations of the Care Act as well as fines. 760 ILCS 100/24 (West 2012).

¶ 45 Under the statutory scheme outlined above, the legislature placed the licensing, investigations and determination of violations of the Care Act and the penalties to be imposed under the authority of the Comptroller. To allow private actions for damages would not further the Care Act's purpose of protecting care funds from fraud or mismanagement. A damages award would not resolve the fraud or mismanagement on the part of a cemetery authority as a license revocation, an action available only to the Comptroller.

¶ 46 The plaintiffs have failed to satisfy the fourth factor. The Care Act is replete with sanctions and remedies for violations of its provisions. See *Rekosh v. Parks*, 316 Ill. App. 3d 58, 74 (2000) (the sanctions imposed for violations of the Funeral Directors and Embalmers Licensing Code (225 ILCS 41/1-1 *et seq.* (West 1998)), including fines, license suspension and revocation, inspections and investigations, were not so deficient as to require the court to imply a private right of action). In addition, the Care Act also provides that in a sale or

15

foreclosure of a cemetery, the purchaser is responsible for any shortages in the care funds existing before or after the sale and "shall honor all instruments issued under Section 4 for that cemetery." 760 ILCS 100/15b (West 2012); see 760 ILCS 100/4 (West 2012) (setting forth the information required to be given a purchaser when depositing care funds with the cemetery authority).

¶ 47 The cases relied on by the plaintiffs in which a private right of action has been implied are distinguishable. In *Corgan v. Muehling*, 143 Ill. 2d 296 (1991), our supreme court held that the implication of a private right of action was within the scope of section 26 of the Psychologist Registration Act (Ill. Rev. Stat. 1981, ch. 111, ¶ 5327)) and consistent with its purpose to protect the public from incompetent and unqualified psychologists. Section 26 gave the State's Attorney the authority to enjoin an uncertified person from representing himself as a psychologist. The court concluded that persons injured by uncertified psychologists would not avail themselves of administrative or criminal proceedings, and in order to uphold and implement the public policy of the Act, it was necessary to imply a private right of action. *Corgan*, 143 Ill. 2d at 314-15.

¶ 48 Relying on *Corgan*, the plaintiffs argue that the fact the Care Act provides for injunctive relief does not mean that a private right of action is not available to them. However, in *Corgan*, the defendant was unlicensed to begin with and thus an injunction would not deter the defendant from continuing to hold him out as and practice as a psychologist in the same way an award of damages would deter him. Since the plaintiffs' alleged injury was the depletion of the care fund, a damages award would not implement the purpose of the Care Act. The purpose of the Care Act is to eliminate fraud and mismanagement in the handling of care funds by cemetery authorities and is addressed by the sanctions for violations of the

Care Act and by the provisions for replenishing the care funds where a shortage exists. The provisions of the Care Act are sufficient to remedy the injury alleged by the plaintiffs, and therefore, it is not necessary to imply a private right of action.

¶ 49        The plaintiffs' reliance on *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379 (1982) is also misplaced. In *Sawyer Realty Group, Inc.*, the supreme court found an implied private right of action under the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1977, ch. 111, ¶ 5701 *et seq.*) which, in addition to departmental enforcement, provided a real estate recovery fund to compensate persons who were unable to satisfy valid judgments against registered brokers or salesmen. *Sawyer*, 89 Ill. 2d at 390-91 (citing Ill. Stat. 1977, ch. 111, ¶ 5716). The Care Act does not contain a similar provision for recovery of depleted care funds by plaintiffs in a civil suit.

¶ 50        We hold that there is no right of private action under the Care Act, and therefore, neither the plaintiffs nor Zion have standing to sue for violations of the Care Act. In light of our holding, we need not address Zion's argument that the lien provision contained in the Care Act did not deprive it of standing or exonerate the Bank from liability in this case. See 760 ILCS 100/15b (West 2012).

¶ 51                                    II. Denial of Leave to Amend

¶ 52                                      A. Standard of Review

¶ 53        The circuit court's decision to deny leave to amend a complaint is reviewed for an abuse of discretion. *Compton*, 382 Ill. App. 3d at 331. "A court abuses its discretion only if it acts arbitrarily, without the employment of conscientious judgment, exceeds the bounds of reason and ignores recognized principles of law; or if no reasonable person would take the position adopted by the court." *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 12.

¶ 54                                                   B. Discussion

¶ 55          The plaintiffs contend that the circuit court abused its discretion when it denied their

request to amend their second amended consolidated complaint to further support their claim

to the existence of a private right of action under the Care Act. We determine that the

plaintiffs forfeited this issue on appeal.

¶ 56          In responding to the Bank's "second motion to dismiss," the plaintiffs attached a June 13,

2011 e-mail from Julia M. Ellis on behalf of the Illinois Comptroller's office.  According to

the research performed by an attorney in the Comptroller's office as to the potential liability

of the Bank, the attorney concluded that the Illinois Comptroller did "not have standing to

bring this action. David Gail the trustor (and maybe Waldheim as the successor trustor?)

have a cause of action against the [Bank] for breach of fiduciary duties.  The beneficiaries

may also have a cause of action."

¶ 57          During the hearing on the Bank's second motion to dismiss, the plaintiffs argued that

there was a private right of action as evidenced by the contents of the June 13, 2011 e-mail

from the Comptroller's office.  Noting that the Bank was challenging the pleadings and that

the plaintiffs had been allowed to file a second amended complaint, filed May 12, 2012, the

circuit court stated as follows:

          "[Y]ou're free to add allegations in your amended complaint consistent with whatever

          information you have.  But the 2-615 motion directs my attention only to the

          pleadings, and unless you've attached exhibits to your pleading in the manner that

          you're seeking to direct my attention to right now, I think it is outside the scope of

          [the Bank's] motion.

MR. HURST [plaintiff's attorney]: Okay. That's fine, [Y]our Honor. If [Y]our Honor finds that is—a necessarily [*sic*] element is lacking under the four-factor test—which I don't think it is.

\* \* \*

I think I can show you other reasons why we meet all the elements, but if that's the case, then I would like leave to amend."

The trial court's final order dismissing the second amended consolidated complaint as to the Bank does not reflect that it denied the plaintiffs' motion for leave to amend. The record does not reflect that the plaintiffs ever sought a ruling on their oral motion for leave to amend the second amended consolidated complaint prior to filing the notice of appeal in this case.

¶ 58        "[I]t is the responsibility of the party filing a motion to request the trial judge to rule on it, and when no ruling has been made on a motion, the motion is presumed to have been abandoned absent circumstances indicating otherwise." *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433 (2007). A party's failure to obtain a ruling on a motion does not translate to a denial of the motion by the court. *Rodriguez*, 376 Ill. App. 3d at 432. Failure to obtain a ruling on a motion prior to filing a notice of appeal serves as an abandonment of the motion and results in the procedural default of any issue pertaining to the motion for purposes of appeal. *Rodriguez*, 376 Ill. App. 3d at 433.

¶ 59        The record reflects that following the request to amend, the plaintiffs' counsel proceeded to argue that the plaintiffs had met all of the elements necessary to determine that a private cause of action existed under the Care Act. After the circuit court granted the Bank's motion to dismiss, the plaintiffs filed their notice of appeal. Under the circumstances, the presumption that the plaintiffs abandoned their motion to amend applies in this case.

¶ 60    We conclude that the plaintiffs abandoned their motion for leave to amend their second amended consolidated complaint, and the issue raised with respect to the motion for leave to amend is procedurally defaulted.

¶ 61                        III. Consumer Fraud Claim

¶ 62                        A. Standard of Review

¶ 63    Dismissal pursuant to section 2-615 is reviewed *de novo*. *Compton*, 382 Ill. App. 3d at 325.  Construction of a statute presents a question of law which the court also reviews *de novo*. See *Majid*, 2015 IL App (1st) 132182, ¶ 13.

¶ 64                        B. Discussion

¶ 65    The plaintiffs contend that the dismissal of their consumer fraud count against the Bank was error.  They note that under section 2Z of the Consumer Fraud Act, "knowingly" violating the Care Act is an unlawful practice within the meaning of the Consumer Fraud Act. See 815 ILCS 505/2Z (West 2012). They argue that "knowingly" does not require that they prove the intent on the Bank's part to disregard the law.

¶ 66    In determining whether a complaint states a cause of action, all well-pleaded facts are taken as true and all reasonable inferences from those facts are construed in favor of the nonmoving party. *Compton*, 382 Ill. App. 3d at 326.  In determining whether the allegations of the complaint are sufficient to state a cause of action, we view the allegations of the complaint in the light most favorable to the plaintiff. *Compton*, 382 Ill. App. 3d at 326. In order for the plaintiffs to succeed in stating a cause of action under the Consumer Fraud Act, they must plead and allege facts, which if true, ultimately proved that the Bank knowingly violated the Care Act.

¶ 67  In their second amended consolidated complaint, the plaintiffs alleged the Bank knowingly violated the Care Act by allowing the depletion of the principal of Rosemont's perpetual-care funds. In support of their claim, the plaintiffs set forth the following factual allegations: (1) under the Care Act, the Bank was required to ensure that the trust principal remained untouched and that only the net income from the trust was used to fund the care and maintenance of the gravesites; (2) the trust agreement required the Bank to comply with the Care Act, and the Bank was on notice that the trust was not in compliance with the Care Act since the Bank's statements showed that Rosemont was withdrawing principal from the trust, and (3) from 2005 on, the Bank had not issued a certification of the annual reports required to be filed by Rosemont.

¶ 68  "The cardinal rule in statutory construction is that the court must ascertain and give effect to the intent of the legislature." *In re Marriage of King*, 208 Ill. 2d 332, 340 (2003). The Consumer Fraud Act does not define the term "knowingly." Where no definition is provided, an unambiguous term is given its plain and ordinary meaning. *Majid*, 2015 IL App (1st) 132182, ¶ 16. "The statute must be applied so that no part is rendered superfluous." *Majid*, 2015 IL App (1st) 132182, ¶ 16. The parties' disagreement over the meaning of a statutory term does not render it ambiguous. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2014 IL App (1st) 132011, ¶ 21.

¶ 69  If the term used in the statute has a settled legal meaning, the courts will normally infer that the legislature intended to incorporate the established meaning. *Maksym v. Board of Election Commissioners*, 242 Ill. 2d 303, 320 (2011) (the legal meaning of the term "residence" had been settled in Illinois for over 100 years and in virtually every setting in which the court construed the term). The plaintiffs maintain that the term "knowingly" has a

settled legal meaning because of its use in section 4-5 of the Criminal Code of 2012(See 720 ILCS 5/4-5 (West 2012)) and statutes, such as the Illinois False Claims Act (740 ILCS 175/3(b)(1) (West 2012)).  However, in both cases, the statute specifically defines "knowing" or "knowledge" in order to determine a violation of that particular statute. Moreover, in *People v. Thoennes*, 334 Ill. App. 3d 320 (2002), the reviewing court cited both section 4-5 of the Criminal Code and the dictionary definition of "knowingly" in determining whether the defendant had committed the offense charged in that case. See *Thoennes*, 334 Ill. App. 3d at 327. The plaintiffs have not established that the term "knowingly," has a settled legal meaning that we must apply in construing section 2Z.

¶ 70    The term "knowingly" does have a plain meaning.  See *People v. Sanders*, 368 Ill. App. 3d 533, 537 (2006) (in general, "a jury need not be instructed on the term 'knowingly' because that term has a plain meaning within the jury's common knowledge").  "Knowing" or "knowingly" is defined as "awareness or understanding; well-informed *** [d]eliberate; conscious ."  Black's Law Dictionary 888 (8th ed. 2004).

¶ 71    In support of its argument that a knowing violation under section 2Z of the Consumer Fraud Act requires "intent," the Bank relies on *Kunkel v. P.K. Dependable Construction, LLC*, 387 Ill. App. 3d 1153 (2009).  In *Kunkel,* the reviewing court held that there was no violation of section 2Z where the plaintiffs failed to establish a knowing violation of the Home Repair and Remodeling Act (Home Repair Act) by the contractor for failing to give the plaintiffs a copy of the consumer rights brochure required by section 20(a) of the Home Repair Act (815 ILCS 513/20(a) (West 2002)).  The court determined that "the plaintiffs provided no evidence on the defendants' state of mind in not providing the brochure, and

there is no evidence in the record to support a knowing violation of the [Home Repair Act]." *Kunkel*, 387 Ill. App. 3d at 1160.

¶ 72    In *Wendorf v. Landers*, 755 F. Supp. 2d 972 (N.D. Ill. 2010), the district court relied on *Kunkel* in determining that the plaintiff failed to state a cause of action under section 2Z of the Consumer Fraud Act. The defendant argued that the plaintiffs failed to allege that the defendant "knowingly" violated the Illinois Physical Fitness Services Act (Fitness Act) (815 ILCS 645/4, 5 (West 2010)). The court rejected the plaintiffs' argument that "if defendant knew about the PFSA and violated it, it knowingly violated it," stating as follows:

> "Although case law is sparse, it appears that violation of the PFSA does not constitute a violation of the [Consumer Fraud Act] unless the PFSA violation was committed knowingly, meaning with intent to disregard the law. [Citations.] To determine that any violation of the PFSA by a party who knew of the existence of it is also a violation of [the Consumer Fraud Act] would render the 'knowingly' requirement in section 2Z superfluous, as there would be no need to distinguish an inadvertent violation from a *knowing* violation." (Emphasis in original.) *Wendorf*, 755 F. Supp. 2d at 978.

Since the plaintiffs did not allege that the defendant intentionally violated the Fitness Act, and there are no allegations from which such an inference could be made, the court determined that the plaintiffs failed to state a cause of action for violation of section 2Z of the Consumer Fraud Act. *Wendorf*, 755 F. Supp. 2d at 978.

¶ 73    We find *Kunkel* distinguishable since the decision in that case was based on the evidence presented at trial, whereas the present case is still at the pleading stage. Moreover, even if we were to agree with the Bank that the plaintiff was required to allege and prove that the Bank

intentionally violated the Care Act, the allegations of the second amended consolidated complaint and the reasonable inferences drawn therefrom were sufficient. The allegations that the Bank was a party to the trust agreement, that the Bank had knowledge of the Care Act and that principal, not just interest, was being withdrawn from the trust, taken as true, ultimately would prove that the Bank committed a "knowing" violation of the Care Act when it allowed Rosemont to withdraw principal to the point of depleting the care trust.

¶ 74    Finally, while the trust agreement shields the Bank from liability, the trust agreement also requires the Bank as trustee to administer the trust in accordance with its purpose, namely, to insure the continued existence of the care funds.  For purposes of resolving a section 2-615 motion to dismiss, we need not reconcile these provisions.

¶ 75    We conclude that the plaintiffs have stated a cause of action under section 2Z of the Consumer Fraud Act for the Bank's violation of the Care Act.  Therefore, the circuit court erred in dismissing count VI of the second amended consolidated complaint.

¶ 76                        IV. Dismissal of Zion's Amended Complaint

¶ 77    The dispositive issue in Zion's appeal is whether it had standing to maintain an action against the Bank either on behalf of itself or on behalf of the gravesite owners whose funds made up the principal of the care fund of which the Bank was trustee.  Our determination that no private right of action exists under the Care Act and that the Bank did not owe a fiduciary duty to the gravesite owners disposes of Zion's appeal from the dismissal of its amended complaint.[5]

---

[5]The agreed order of January 24, 2012 dismissed Zion's claim for the turnover of funds held by the Bank as moot because the Bank agreed to turn over the funds to the new trustee.  The order preserved for all parties any claims or defenses, including claims with respect to the funds.  In its amended complaint, Zion sought ancillary relief in the form of expenses, attorney fees and costs in connection with its efforts to recover the funds from the Bank.  However, Zion states in footnote 18 in its appellant's brief that it "does not believe it appropriate to present its appeal on the re-pleaded Count III in this proceeding."

¶ 78                                    CONCLUSION

¶ 79        We affirm the dismissal of the second amended consolidated complaint except for the

plaintiffs' claim against the Bank for violation of section 2Z of the Consumer Fraud Act.  The

case is remanded for further proceedings on the section 2Z claim.  We affirm the dismissal of

Zion's amended complaint.

¶ 80        No. 1-13-1274, Affirmed in part and reversed in part; cause remanded.

¶ 81        No. 1-13-1331, Affirmed.

¶ 82        No. 1-13-3131, Affirmed.