2017 IL App (1st) 161020

FIFTH DIVISION
September 29, 2017

No. 1-16-1020

MY BAPS CONSTRUCTION CORPORATION, )    Appeal from the Circuit Court
an Illinois Corporation, and GINA KROL, as )    of Cook County.
Bankruptcy Trustee of the Estate of My Baps )
Construction Corporation, )
)
     Plaintiffs-Appellants, )
)
     v. )    No. 12 CH 11822
)
THE CITY OF CHICAGO, an Illinois Municipal )
Corporation; THE CITY OF CHICAGO )
DEPARTMENT OF PROCUREMENT )
SERVICES; JAMIE L. RHEE, Chief Procurement )
Officer for the City of Chicago Department of )    Honorable Chicago
Procurement Services; THE CITY OF CHICAGO )    Kathleen G. Kennedy,
DEPARTMENT OF TRANSPORTATION; and )    Judge Presiding.
GABE KLEIN, Commissioner, the City of Chicago )
Department of Transportation, )
)
     Defendants-Appellees. )

JUSTICE HALL delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and
opinion.

**OPINION**

¶ 1      The plaintiffs, My Baps Construction Corporation and Gina Krol,[1] bankruptcy trustee for

the estate of My Baps Construction Corporation (collectively My Baps), filed a three-count

complaint in the circuit court of Cook County against the defendants, the City of Chicago,

_____

[1] During the circuit court proceedings, David Grochocinski, the original trustee in bankruptcy for My Baps, was replaced by Ms. Krol.

the City of Chicago Department of Procurement Services (DOPS), Jamie L. Rhee, Chief Procurement Officer (CPO) for the City of Chicago's Department of Procurement Services (CPO Rhee), the City of Chicago Department of Transportation (CDOT), and Gabe Klein, Commissioner of the City of Chicago Department of Transportation (collectively the City). Count I sought a writ of *certiorari* to challenge CPO Rhee's decision denying My Baps' claims. Counts II and III sought damages for breaches of two contracts the City awarded My Baps. The circuit court granted the City's section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2012)) motion to dismiss counts II and III of the complaint for failure to state a cause of action and quashed the writ of *certiorari* sought in count I of the complaint.

¶ 2  My Baps appeals contending that the circuit court erred when it (1) dismissed counts II and III of the complaint for failure to state causes of action for breach of contract, (2) ruled that the administrative proceeding did not violate the automatic stay in force after My Baps filed for bankruptcy protection, (3) denied My Baps' request to supplement the administrative record, and (4) affirmed the decision of CPO Rhee. For the reasons stated below, we confirm the decision of CPO Rhee and affirm the orders of the circuit court.

¶ 3                                 BACKGROUND

¶ 4                                   I. Facts

¶ 5  The City solicited bids for its "Green Alley" construction project. The project was for the construction of new alleys and included removal of existing alley pavement, installation of new sewer structures and mainlines, and installation of new pavement, driveways, and ramps. The bid package included a pricing schedule, which contained line items for each type of work to be performed, specified the quantity of material and how the material was to be

2

measured, *i.e.*, square feet, cubic feet, or feet. The contract bidder inserted the price per the applicable measurement in order to arrive at the amount per line item. Bidders were instructed to submit balanced bids for each line item and cautioned not to submit bids nominally pricing some line items and enhancing the pricing for other line items.

¶ 6    Three line items are pertinent to the issues on appeal. Line item 2 was described as "EARTH EXCAVATION" and provided for the clearing, grading, or excavating of "the alley DEFINED AREAS." Line item 3 was described as "SPECIAL EXCAVATION," and provided for "the excavation or removal and satisfactory disposal of only that volume of material regardless of its nature" necessary to the construction of the improvements. Line item 49 was described as "ALLEY PAVEMENT REMOVAL AND SUBGRADE PREPARATION FOR GREEN ALLEY."

¶ 7    My Baps bid on two contracts: the South Area contract and the North Area contract. Under the South Area contract, line item 49 specified 7500 square yards. Under the North Area contract, line item 49 specified 4,800 square yards. For line item 49, My Baps' bid provided a unit price of $72, for a total of $540,000 for the South Area contract and $345,600 for the North Area contract.

¶ 8    The City accepted My Baps' bid and awarded it the South Area contract for a total of $5,562,150 and the North Area contract for a total of $3,211,690. Both contracts were to expire December 1, 2008, but both were extended through December 31, 2010. The contract amounts were adjusted upwards and resulted in a final contract value of $11,562,150 for the South Area contract and $9,211,690 for the North Area contract (hereinafter referred to as the Contracts).

¶ 9                              II. Claims and Disputes Resolution Procedures

¶ 10                        A. Section XX Claims and Disputes Provision of the Contracts

¶ 11        Section XX of the Contracts set forth the procedure for resolving claims and disputes

arising during construction. Claimants were required to comply with the provisions of section

XX as a precondition of seeking judicial review of an adverse decision by the CPO. In

subsection B of section XX, a claimant was required to comply with the following:

> "Within 14 days after a basis for claim arises, you must submit your claim in
> writing to the City's resident engineer or its project manager ('Commissioner's
> Representative[']). This written claim to the Commissioner's Representative will
> constitute 'notice' to the City for purposes of determining initial timeliness of the
> claim; oral notice is insufficient. If you and the Commissioner's Representative are
> unable promptly (depending upon the complexity of the matter) to resolve the claim,
> you must forward your claim in writing to the Commissioner together with the
> documents listed *** below."

¶ 12        In the event the claimant disputed the CDOT commissioner's denial or resolution of its

claim, the claimant was required to invoke the dispute resolution procedure set forth in

subsection C of section XX and which provided as follows:

> "you have 10 days to forward your claim and your documentation to the [CPO]
> indicating to him that you are requesting resolution of a dispute and showing you
> have complied with the preceding claims procedure. Your 10-day period to invoke
> dispute resolution by the [CPO] is counted from the date the Commissioner's written

resolution was sent to you, or if he has not responded or forwarded the claim, from the date on which the time for the Commissioner's response lapsed."

The failure to file a request for resolution of the dispute within the 10-day period, waives the claim, as well as the right to make the claim later and the right to dispute the resolution or denial of the claim.

¶ 13     Once the dispute resolution procedures are invoked, the CPO "will proceed to a final and binding decision under such rules and regulations as he from time to time promulgates." If either the claimant or the commissioner disagrees with the CPO's decision, "the exclusive remedy is judicial review by a common law writ of *certiorari*. Unless such review is sought within 35 days of receipt of the [CPO's] decision, all rights to seek judicial review are waived."

¶ 14                              B. DOPS Rules and Regulations

¶ 15     Pertinent to the issues on appeal are portions of the "REGULATIONS OF THE DEPARTMENT OF PROCUREMENT SERVICES FOR RESOLUTION OF DISPUTES BETWEEN CONTRACTORS AND THE CITY OF CHICAGO (DOPS regulations)." The DOPS regulations "establish the dispute resolution procedures for Contracts. These procedures apply to the resolution of a Contract dispute except to the extent that the subject Contract specifies different procedures." The DOPS regulations further provide that the request for resolution of a claim "must be submitted no later than 120 days after the expiration of the Contract. Failure to submit a Request either during the contract term or within the 120 day time period after expiration will constitute a waiver of the opportunity to initiate a dispute resolution."

¶ 16          The DOPS regulations specify the documentation and materials required to be submitted to the CPO in the request. In addition, the DOPS regulations provide that, in its request for resolution of the dispute, a party could submit "a statement explaining why the Requesting Party believes that prior to rendering a final decision, the [CPO] should meet with all or some of the Requesting Parties, the Responding Parties," or other parties necessary to the resolution of the dispute. The purpose of such a meeting "is to enable the [CPO] to obtain information that is not available in the written submissions of the Parties, or to better understand the positions of the Parties concerning the dispute." The responding party could submit supplemental documentation or written information comparable to the information the requesting party was required to submit.

¶ 17          In the event that the CPO agrees to hold a meeting, the DOPS regulations provide as follows:

> "The [CPO] will preside over the meeting ***. Each party may be represented by an attorney. *** The [CPO] may question any party in any order. Each Party may be allowed to question another Party, but will be subject to the restrictions of the [CPO]. The formal rules of evidence will not apply, but the Parties must avoid the presentation of extraneous or irrelevant material."

¶ 18          The DOPS regulations provide that the CPO's final decision could be reached on the written submissions of the parties only. Finally, the DOPS regulations provide that "[n]either the [CPO's] determination, nor the continued performance by either party, constitutes an admission as to any factual and/or legal position in connection with the dispute or a waiver of any rights under the Contract."

¶ 19     My Baps commenced work on the project in 2007. It received its first payout on the Contracts in late 2007.

¶ 20                    III. Dispute Resolution Proceedings on My Baps' Claims

¶ 21                                    A. Notice of Claims

¶ 22     In a November 4, 2009, letter to John Yonan, deputy commissioner of CDOT, Yashvant Patel, president of My Baps, asserted that, under the Contracts, the excavation of the alleys to the subgrade called for payment under line item 49 rather than line items 2 or 3. Mr. Patel pointed out that on similar CDOT green alley projects the same work had been compensated under line item 49, and he requested the same compensation under the Contracts.

¶ 23     In his March 2, 2010, response to Mr. Patel's letter, Mr. Yonan denied My Baps' request for payment under line item 49. Mr. Yonan pointed out that My Baps did not comply with the specific instructions for performing the work called for under line item 49, CDOT did not request that My Baps perform the excavation of the alleys under line item 49, and the other projects specified performance under line item 49. On December 17, 2010, Mr. Patel again wrote Mr. Yonan complaining that My Baps had not been compensated for the work it performed and that the work was still being paid for under line item 3 rather than under line item 49.

¶ 24     On February 25, 2011, Mr. Yonan responded by pointing out that the construction methods used by My Baps did not meet the requirements of line item 49. Mr. Yonan specifically noted that item 49 required "that the existing pavement be utilized as a platform for the removal equipment to operate from. This specification prohibits construction equipment from driving on the exposed subgrade surface in an effort to minimize the

compaction of the existing subgrade material. The construction of alleys performed to date were not performed in this manner, therefore payment was made utilizing Item 2—Earth Excavation and Item 3—Special Excavation in accordance with the contract documents." Mr. Yonan also denied My Baps' request for payment for paving over the infiltration trenches. Mr. Yonan explained that My Baps' choice of paving over the trench and removing the excess material as "contractor means and methods" and was considered as part of My Baps' construction procedure and not a requirement of the contract. Therefore no additional compensation was due My Baps for this work.

¶ 25                    B. Proceedings Before the CDOT Commissioner

¶ 26        On September 20, 2011, My Baps' attorney wrote to Bobby L. Ware, the commissioner of the CDOT, submitting a written claim in accordance with section XX of the Contracts. In the letter, the attorney explained that My Baps had attempted, albeit unsuccessfully, to resolve the payment disputes with Mr. Yonan. The attorney informed Commissioner Ware that My Baps was on the verge of bankruptcy. In compliance with the requirements of section XX, My Baps submitted a draft complaint and exhibits thereto, a compact disc containing records supporting the claim, and a summary of the damages totaling $6,382,197.

¶ 27        On October 14, 2011, Gabe Klein, the acting commissioner of CDOT, responded to My Baps, denying its claim. Commissioner Klein determined that My Baps did not comply with the Contracts' claims' provisions in that My Baps did not contact the resident engineer regarding the claim and the claim was untimely, having been brought more than 14 days after the basis for the claim arose. Commissioner Klein also denied the claim on the merits, noting that there was no line item 49 for the alleys for which My Baps sought payment, though he

acknowledged that the City had mistakenly paid My Baps under item 49 for other alleys. In addition, My Baps failed to submit any supporting documentation that it complied with the specifications required for payment under line item 49. Commissioner Klein also denied My Baps request for payment for the retrenching work. Commissioner Klein advised My Baps that in accordance with the dispute resolution procedure, it could file a request for resolution of the dispute with the City's CPO.

¶ 28                           C. Proceedings Before the CPO

¶ 29        On October 28, 2011, My Baps' attorney wrote to CPO Rhee, invoking the dispute resolution procedure set forth in subsection C of section XX of the Contracts. My Baps disputed Commissioner Klein's denial of its claim, arguing that the notice to proceed with the work instructed it to submit a copy of all correspondence to Mr. Yonan, that there were complex issues which took time to resolve, and it exhausted all of its efforts to resolve the disputes as required by the claim provisions in the Contracts. My Baps maintained that the City directed it to remove the alley pavement and prepare the subgrade in accordance with line item 49. My Baps further maintained that the City was simply trying to save money by not paying My Baps, violating the terms and spirit of the Contracts, as well as its duty of good faith and fair dealing.

¶ 30        Finally, My Baps' attorney informed CPO Rhee that My Baps had filed for bankruptcy protection on September 21, 2011. The attorney explained that My Baps was submitting this letter to preserve its rights under the Contracts and that it did not intend to waive any rights under the Bankruptcy Code.

¶ 31        On November 21, 2011, the City responded to My Baps' request for dispute resolution of its claim that it was owed additional compensation under line item 49. The City maintained that Commissioner Klein correctly determined that My Baps' claim was untimely and that My Baps had not contacted the resident engineer as required by subsection B of section XX. The City further maintained that My Baps' reliance on the correspondence requirement in notice to proceed was misplaced since the correspondence requirement did not reference the Contracts' specific procedures for resolving claims and disputes.

¶ 32        Addressing the merits of My Baps' claim, the City relied on the supporting documents and the affidavit of Ibrahim Hadzic, CDOT's project manager. The City pointed out that My Baps produced no documentation showing that the City directed it to perform work under line item 49. After My Baps' bid was selected, Mr. Hadzic estimated the quantities of the necessary materials, which could not be altered unless the change was approved by the resident engineers. After reviewing the estimates, My Baps never requested a change in the estimated quantities from line items 2, 3, and 49. CDOT's estimated quantities for two alleys in the south area and one in the north area did not request quantities under line item 49. My Baps claimed to have done work under line item 49, even though its spreadsheets indicated that the City did not request work under line item 49.

¶ 33        The City pointed out that the specific removal procedures in line item 49 were to avoid compaction of the subgrade. Line item 49 would only have been used in alleys where the subgrade was not already compacted and would not have been used in the majority of the City's alleys, which had been traveled on for 100 years. The City's quantity estimates and costs budget anticipated that the removal and disposal work would be done under line items 2 and 3 rather than 49. Finally, the City maintained that My Baps was not entitled to additional

compensation for the installation of the infiltration trenches and the removal of the pavement since those costs were the result of My Baps' chosen method of construction and not required under the contracts.

¶ 34    On February 27, 2012, CPO Rhee denied My Baps' claims for compensation under the contracts for removing existing pavement and for its work in connection with the new infiltration trenches. Based upon the documentation submitted by My Baps and the City, CPO Rhee found that My Baps' request for resolution of the claims was not timely as it was submitted more than 120 days after the expiration of the Contracts. The Contracts expired on December 31, 2010. Because the last day to file the request fell on a Saturday, My Baps was required to request dispute resolution by Monday, May 2, 2011. My Baps did not submit its request until October 27, 2011,[2] or 300 days after the expiration of the Contracts. Therefore, My Baps waived its opportunity to invoke dispute resolution under the Contracts.

¶ 35    CPO Rhee also found that My Baps' submittal of its claims to the CDOT commissioner was also untimely since they were not submitted within 14 days after the basis of the claim arose. The CPO found nothing in My Baps' letter of November 4, 2009, establishing when the basis for its claim under line item 49 arose and made no mention of any claim for its work on the infiltration trenches. Moreover, My Baps' records indicated that it had been receiving payments for two years prior to November 4, 2009, and should have been aware of any payment issues. Therefore, CPO Rhee upheld Commissioner Klein's untimeliness determination.

¶ 36    CPO Rhee further found that My Baps' reliance on the notice to proceed to explain why it dealt with Mr. Yonan rather than the resident engineer or the project manager was

---

[2] The letter from My Baps' attorney to CPO Rhee was dated October 28, 2011.

misplaced. Mr. Yonan was never designated the resident engineer or the project manager. The notice to proceed referred to correspondence related to the construction work whereas section XX of the Contracts controlled the resolution of written claims.

¶ 37    Based on the Contracts and the competent evidence, CPO Rhee found that My Baps' claims were properly denied on their merits. CPO Rhee noted that My Baps' did not dispute that, based on the City's estimated material quantities, it was not authorized to proceed under line item 49. Rather, My Baps' argued it should have been authorized under line item 49, not under line item 2, earth excavation, or line item 3, special excavation. My Baps failed to raise the issue and request a deviation from the City's estimates prior to commencing work. In fact, it was two years before My Baps raised the issue with Mr. Yonan.

¶ 38    CPO Rhee pointed out that the specifications for line item 3 informed My Baps that the work authorized under those items include removal of existing pavement, regardless of what the existing pavement consisted of, as required to construct the project upgrades. My Baps agreed to those terms by commencing work on the project.

¶ 39    CPO Rhee acknowledged the evidence that My Baps was paid for work under line item 49. In his affidavit, Mr. Hadzic stated that those payments were made in error since CDOT did not direct My Baps to perform work under line item 49 in any of those alleys, and he had denied other requests by My Baps for payment under line item 49. The quantity of material estimates for those alleys further supported the fact that those payments were made in error.

¶ 40    Turning to the evidence My Baps submitted in support of its claim, CPO Rhee found that despite the vast amount of documentation it produced, My Baps made no attempt to relate the documents to the dispositive issue. At best, the documentation offered only My Baps' opinion that it was entitled to payment under line item 49 and the amount. My Baps' own

spreadsheets and copies of the estimated material quantities it furnished confirmed that the City authorized the work under line items 2 and 3 but not under line item 49.

¶ 41 Regarding My Baps' claim for payment for the work it did in connection with the infiltration trenches, CPO Rhee found that My Baps failed to submit any evidence that required it to perform the work in the manner it chose. My Baps merely took issue with Commissioner Klein's determination that the additional cost was due to the means and methods chosen by My Baps to perform the work. There was no evidence that the City directed My Baps to utilize the procedure it chose to do the work or that a provision in the Contracts required the City to pay for means and methods of a contractor to perform the work. The Contracts called for payment for work pursuant to the basis of payment specified for each alley.

¶ 42                      IV. Circuit Court Proceedings

¶ 43 On April 2, 2012, My Baps filed a three-count complaint in the circuit court of Cook County against the City. Count I sought a writ of *certiorari*. Counts II and III sought damages for breaches of the Contracts.

¶ 44 The City filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)). The City maintained that the Contracts provided that the sole remedy from the CPO's decision was a writ of *certiorari*, which My Baps sought in count I. Therefore, counts II and III for breach of contract should be dismissed with prejudice.

¶ 45 My Baps responded that the Contracts did not limit its relief to a writ of *certiorari* since the section XX of the Contracts provided that the CPO's determination did not constitute "a

waiver of any rights under the Contract." My Baps maintained that it was not afforded a full and fair administrative proceeding on its claims and, therefore, the circuit court's jurisdiction was not limited to review under the writ of *certiorari*. Finally, My Baps maintained that the administrative proceeding violated the automatic stay order entered when My Baps filed for bankruptcy on September 21, 2011. After the City filed a reply, the circuit court heard arguments on the motion to dismiss.

¶ 46    On May 30, 2013, the circuit court issued its opinion and order granting the City's motion to dismiss counts II and III for breach of contract. The court rejected My Baps' nonwaiver of rights argument because the Contracts did not give it any right to review other than by a writ of *certiorari*. Contrary to My Baps' arguments, the court found that the plain language of the contracts set forth the mandatory procedure before the parties could seek judicial review and clearly contemplated an administrative proceeding. The court determined that CPO Rhee had authority to render a decision pursuant to section 8-10-16(e) of the Illinois Municipal Code (Purchasing Act) (65 ILCS 5/8-10-16(e) (West 2012) (enforcement of written specifications)). In addition, while unusual for a government agency and a private party do so, the court noted that parties may designate anyone to adjudicate their differences. The court further found that it could grant the relief the plaintiffs sought in counts II and III pursuant to the writ of *certiorari*. Finally, the circuit court found that the administrative proceedings did not violate the automatic stay since it was My Baps who initiated the dispute resolution proceedings.

¶ 47    On July 15, 2013, My Baps filed a motion for clarification of the circuit court's order. My Baps requested the court to identify which step My Baps took that constituted its invoking of the dispute resolution proceeding under the Contracts. My Baps also sought to

clarify whether the trustee in bankruptcy's filing of the present complaint operated retroactively to modify the automatic stay order. On September 13, 2013, the court denied the motion to clarify.

¶ 48     As its answer to count I of the complaint, the City filed the administrative record. The circuit court ordered the parties to brief the issue of whether new material could be added to the existing administrative record. My Baps argued that under section XX of the Contracts, providing that it did not admit either factual or legal positions, allowed it to present additional material in a writ of *certiorari* proceedings. It maintained that a writ of *certiorari* was subject to the rules of the Code, which required the City to file an answer addressing each allegation of the complaint. The City maintained that the long-standing rule in Illinois held that *certiorari* proceedings were limited to the record of the administrative proceeding. The City further maintained that the dispute resolution procedure provision that the CPO's determination did not constitute binding admissions factual or legal on My Baps' part still allowed My Baps to challenge the correctness of the determination on either factual or legal grounds contained in the administrative record.

¶ 49     On February 14, 2014, the circuit court sustained the City's objections to supplementing the administrative record. After the parties submitted their respective briefs on the issuance of the writ of *certiorari* and the court heard arguments by the parties, the court ordered additional briefing on the Contracts' requirement that compliance with the provisions of section XX was a precondition to seeking judicial review of an adverse decision of the CPO.

¶ 50     On March 3, 2016, the circuit court issued its opinion and order. Initially, the court determined that it had jurisdiction to review the decision of the CPO without first establishing that My Baps had satisfied the contractual precondition to judicial review.

¶ 51    The circuit court then addressed the issue of timeliness. The court found that My Baps failed to establish that it complied with the 14-day time frame for submitting its claims in writing to the Commissioner. The court further found that My Baps failed to establish that it complied with the DOPS regulations, which applied unless the contracts specified different procedures. The DOPS regulations required that claims be submitted to the CPO during the contract term or within the 120-day period following the expiration of the contract. The court found that the Contracts expired on December 31, 2010, but My Baps did not submit its claim to the CPO Rhee until October 27, 2011.[3]

¶ 52    The circuit court considered My Baps' equitable estoppel assertions: My Baps attempted to resolve the dispute with Mr. Yonan, rather than Mr. Hadzic, because Mr. Hadzic was the source of the dispute; Mr. Yonan never advised them that he was not the individual it should be dealing with; and Mr. Hadzic was copied on all the communications with Mr. Yonan, making him a recipient of the communications as required by the Contracts. The court found that these facts were insufficient to establish the elements of equitable estoppel.

¶ 53    The circuit court rejected My Baps' due process claims. The court found that My Baps failed to raise the issue of CPO Rhee's impartiality during the administrative proceedings and it was procedurally defaulted from raising it in the circuit court. In addition, My Baps had contractually agreed that the CPO would serve as the final decision maker. The court also rejected My Baps' argument that it was entitled to an evidentiary hearing. CPO Rhee's decision reflected her consideration of the parties' submissions, the relevant documents, and the case law. The DOPS regulations did provide for a more expansive review, but My Baps did not opt to request a meeting with CPO Rhee.

_____

[3] As previously noted, the correct date was October 28, 2011.

¶ 54    The circuit court rejected My Baps' substantive due process claim. The court found that substantive due process did not apply to My Baps' breach of contract claims since the claims did not involve legislative governmental action and My Baps failed to allege a violation of another substantive constitutional right or allege that the available state remedies were inadequate.

¶ 55    Finally, the circuit court determined that CPO Rhee's decision was not against the manifest weight of the evidence. My Baps claimed that CPO Rhee improperly relied on Mr. Hadzic's affidavit. The court found that in addition to the affidavit, CPO Rhee conducted her own analysis of the specifications and the contracts before concluding that My Baps was not entitled to be paid for its work under line item 49 and that My Baps failed to establish its claims for payment for the work done in connection with the infiltration trenches.

¶ 56    The circuit court affirmed the decision of CPO Rhee and ordered the writ of *certiorari* quashed.

¶ 57    On April 1, 2016, My Baps filed a timely notice of appeal from the orders of the circuit court dismissing counts II and III of its complaint, affirming the decision of CPO Rhee, and quashing the writ of *certiorari* requested in count I of the complaint.


¶ 58                                    ANALYSIS

¶ 59                I. Section 2-615 Dismissal of Breach of Contract Claims

¶ 60    My Baps contends the circuit court erred when it determined that the exclusive remedy under the contracts was judicial review by a writ of *certiorari*. My Baps argues that the contracts did not contemplate an administrative proceeding, the CPO did not have statutory authority to conduct administrative proceedings and to issue a decision binding on the

parties, and it did not knowingly, voluntarily, or intentionally waive its right to pursue its contract remedies.

¶ 61                                  A. Standard of Review

¶ 62    We review dismissals pursuant to section 2-615 of the Code *de novo*. *Kagan v. Waldheim Cemetery Co.* 2016 IL App (1st) 131274, ¶ 26. " 'A section 2-615 motion to dismiss attacks the legal sufficiency of the complaint based upon defects appearing on the face of the complaint.' " *Kagan*, 2016 IL App (1st) 131274, ¶ 29 (quoting *Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 325-26 (2008)). "All well-pleaded facts and all reasonable inferences from those facts are taken as true." *Kagan*, 2016 IL App (1st) 131274, ¶ 29. "Unless it is clearly apparent that the plaintiff could prove no set of facts that would entitle him to relief, a complaint should not be dismissed." *Kagan*, 2016 IL App (1st) 131274, ¶ 29.

¶ 63                                  B. Discussion

¶ 64    My Baps contends that the contracts did not contemplate or provide for an administrative hearing because (1) the contracts did not refer to an administrative proceeding but rather describe a precondition to seeking judicial review of the parties' dispute, (2) it had no right to respond to the commissioner's decision, and (3) the only relief it could receive was a modification of the contract.

¶ 65    In the absence of any case or statutory support for its argument, My Baps' argument is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2017). We note, however, that contrary to My Baps' argument, its relief was not limited to a contract modification. Rather, the dispute

resolution procedure provided that the commissioner's response to a claim "may be in the form of a contract modification."

¶ 66    Next, My Baps contends that the CPO did not have statutory authority to conduct administrative proceedings and therefore, her decision was void. My Baps maintains that section 8-10-16 of the Purchasing Act (65 ILCS 5/8-10-16 (West 2016)) does not contain any language granting the CPO the power to conduct administrative hearings or render final binding decisions. We disagree.

¶ 67    My Baps correctly notes that administrative agencies exercise purely statutory powers and possess no inherent or common law powers. *O'Grady v. Cook County Sheriff's Merit Board*, 260 Ill. App. 3d 529, 534 (1994). The power and authority claimed by an administrative agency must come from within the provisions of the statute by which the agency was created. *O'Grady*, 260 Ill. App. 3d at 534. "The authority of an administrative agency must derive either from the express language of the enabling act or by fair implication and intendment from the express provisions of the act as an incident to achieving the objectives for which the agency was created." *O'Grady*, 260 Ill. App. 3d at 534-35.

¶ 68    Pursuant to the Purchasing Act, the City created a department of purchases, contracts, and supplies to be headed by the purchasing agent. *Chicago Food Management, Inc. v. City of Chicago*, 163 Ill. App. 3d 638, 643-44 (1987). The purchasing agent is the sole agent of the municipality in contracting for labor, services material, or work. 65 ILCS 5/8-10-16(b) (West 2016). Section 8-10-16 of the Purchasing Act sets forth the duties of the purchasing agent and provides in pertinent part as follows:

"The purchasing agent shall: (a) adopt, promulgate and from time to time revise rules and regulations for the proper conduct of his office; *** [and] (e) enforce written

19

specifications describing standards established in conformity with this Division 10[.]"

65 ILCS 5/8-10-16 (West 2016).

¶ 69　　The fact that section 8-10-16 does not expressly grant the purchasing agent the power to conduct an administrative proceeding is not the final word on the issue. "An express grant of power to an administrative body or officer includes the authority to do all that is reasonably necessary to execute that power or to perform the duty specifically conferred." *O'Grady*, 260 Ill. App. 3d at 535-36. In order to carry out its duties, the purchasing agent is given rulemaking and enforcement powers. While not expressly authorized by the Purchasing Act, the purchasing agent's rulemaking and enforcement powers imply the use of an administrative proceeding in order to execute those powers. See *O'Grady*, 260 Ill. App. 3d at 535-36 (the express authority given to the sheriff's merit board to investigate and enforce the Merit Act (55 ILCS 5/3-7015 (West 1992)) implied the authority of the merit board to void appointments made in violation of the Merit Act).

¶ 70　　Next, My Baps maintains that it did not knowingly, voluntarily, or intentionally waive its right to remedies other than the writ of *certiorari*. My Baps argues that the claims and disputes provisions in the Contracts did not alert it that it was waiving its right to seek relief via a breach of contract suit in circuit court. However, the claims and disputes provision, which My Baps admits it agreed to, specifically limited the resolution of any disagreement with the CPO's decision to "judicial review by a common law writ of *certiorari*." Nonetheless, My Baps points out that under section XX of the contracts as well as the DOPS regulations, "[n]either the [CPO's] determination, nor the fact continued performance by either party, constitutes an admission as to any factual and/or legal position in connection with the dispute or a waiver of any right under the Contract." My Baps maintains that those

provisions established that it did not waive its right to pursue a breach of contract claim against the City.

¶ 71     "The interpretation of a contract presents a question of law subject to *de novo* review on appeal in accordance with the general rules applicable to contract interpretation." *Storino, Ramello & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 18. In construing a contract, our primary objective is to give effect to the parties' intent. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). We construe the contract as a whole, viewing each portion in light of the other provisions. *Thompson*, 241 Ill. 2d at 441. "The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract." *Thompson*, 241 Ill. 2d at 441.

¶ 72     Neither section XX nor the DOPS regulations expanded the remedies available to My Baps. The nonwaiver provision referred to "any rights under the Contract." Under the Contracts, My Baps' exclusive remedy for disagreement with the CPO's decision was judicial review by the writ of *certiorari*.

¶ 73     My Baps agreed to the terms of the contracts, which included the claims and disputes resolution provision. That provision clearly limited the parties' remedy for disagreement with the CPO's final determination to judicial review by the writ of *certiorari*. Therefore, we reject My Baps' argument that it did not knowingly, voluntarily, or intentionally waive its right to pursue a breach of contract action against the City.

¶ 74     Next, My Baps argues that the DOPS regulations do not apply to its contracts with the City because the contracts specified different procedures than those set forth in the DOPS regulations. We disagree. Under the DOPS regulations, the procedures establishing dispute resolution procedures apply, "except to the extent that the subject Contract specifies different

procedures." The parties agreed to follow the claims and disputes resolution proceedings provision in the contracts, which specifically provided that the CPO "will proceed to a final and binding decision under such rules and regulations as he from time to time promulgates."

¶ 75     Finally, My Baps directs our attention to a decision by Judge Kathleen Pantle of the Cook County circuit court. In George W. Kennedy Construction Co. v. City of Chicago, No. 11 CH 16385 (Cir. Ct. Cook Co.), Judge Pantle rejected the City's argument that the same dispute resolution procedure did not constitute a waiver of a party's right to sue the City in a court of law. My Baps acknowledges that Judge Pantle's decision is not binding on this court's construction of the contracts in the case before us. See *People v. Leavitt*, 2014 IL App (1st) 121323, ¶ 48 (this court is only obliged to follow the decisions of the Illinois Supreme Court and of the United States Supreme Court, as both of these tribunals exercise appellate jurisdiction over the Illinois Appellate Court).

¶ 76     We conclude that under the Purchasing Act, the CPO had an implied right to conduct an administrative proceeding to enforce her statutory duties. We further conclude that My Baps waiver of its right to pursue a breach of contract remedy was voluntary, intentional, and knowing. Therefore, the dismissal of counts II and III alleging breach of contract was proper.

¶ 77                         II. Violation of Bankruptcy Stay

¶ 78     My Baps contends the City violated the automatic bankruptcy stay by moving forward with the administrative proceeding. My Baps filed for bankruptcy on September 21, 2011.

¶ 79     In *Williams Awning Co. v. Illinois Workers' Compensation Comm'n*, 2011 IL App (1st) 102810WC, the reviewing court noted that section 362 of the Bankruptcy Code (11 U.S.C. § 362 (2006)) provided that a bankruptcy petition " 'operates as a stay, applicable to all

entities, of \*\*\* the commencement or continuation \*\*\* of a judicial \*\*\* action or proceeding against the debtor that was or could have been commenced' before the debtor filed for bankruptcy protection." *Williams Awning Co.*, 2011 IL App (1st) 102810WC, ¶ 11 (quoting *Cohen v. Salata*, 303 Ill. App. 3d 1060, 1064 (1999)). An action taken in violation of the automatic stay provisions is void. *Williams Awning Co.*, 2011 IL App (1st) 102810WC, ¶ 11.

¶ 80     The City and the circuit court below relied on *Martin-Trigona v. Champion Federal Savings & Loan Ass'n*, 892 F.2d 575 (7th Cir. 1989). See *Cohen*, 303 Ill. App. 3d at 1065 (this court is bound to follow the interpretation adopted by the federal courts in interpreting federal statutes). In *Martin-Trigona*, the court of appeals held that the automatic stay was inapplicable to matters initiated by the debtor because the language of the statute referred to an action against the debtor. *Martin-Trigona*, 892 F.2d at 577. Unlike the workers' compensation proceedings in *Williams Awning Co.*, the dispute resolution proceedings was initiated by My Baps when it invoked the Contracts' disputes resolution procedure in its October 28, 2011, letter to CDOT Commissioner Ware.

¶ 81     Therefore, the circuit court did not err in finding that the City did not violate the bankruptcy court's automatic stay order.


¶ 82          III. Admission of the Administrative Record and Denial of Request to Supplement the Administrative Record

¶ 83     My Baps contends that the circuit court erred when it allowed the City to file the record of the administrative proceedings as its answer to the complaint and denied My Baps' request to supplement the administrative record. We disagree.

¶ 84    My Baps argues that because the Purchasing Act did not adopt the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)), the Code applies to the proceedings in this case. *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 354 (2006) (supreme court rules and the Civil Practice Law (735 ILCS 5/art. II (West 2002)) apply to all proceedings in the trial court, except to the extent they are regulated by a different statute). Therefore, the City was required to file an answer complying with the requirements of section 2-610 of the Code (735 ILCS 5/2-610 (West 2016)).

¶ 85    Section 2-610 of the Code provides in pertinent part as follows:

"(a) Every answer and subsequent pleading shall contain an explicit admission or denial of each allegation of the pleading to which it relates.

(b) Every allegation, except allegations of damages, not explicitly denied is admitted, unless the party states in his or her pleading that he or she has no knowledge thereof sufficient to form a belief, and attaches an affidavit of the truth of the statement of want of knowledge, or unless the party has had no opportunity to deny." 735 ILCS 5/2-610(a), (b) (West 2016).

Because the City failed to file an answer denying the allegations of count I of the complaint, My Baps concludes that the circuit court should have entered judgment for My Baps on count I and granted the writ of *certiorari*.

¶ 86    "A common law writ of *certiorari* is a general method of obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review." *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996). The same standard of review is applicable to a writ

of *certiorari* and actions under the Administrative Review Law. *Sroga v. Personnel Board of the City of Chicago*, 359 Ill. App. 3d 107, 110 (2005).

¶ 87     In *Des Plaines Currency Exchange, Inc. v. Knight*, 29 Ill. 2d 244 (1963), the supreme court determined that the provisions of the Civil Practice Act did not apply to administrative review proceedings. Citing its prior decision in *Jewell v. Carpentier*, 22 Ill. 2d 445 (1961), the court reiterated that "the Administrative Review Act[4] does not contemplate that issues of fact shall be framed by complaint and answer. The review under the act is upon the record of the administrative agency and the provisions of the Civil Practice Act do not apply." *Des Plaines Currency Exchange, Inc.*, 29 Ill. 2d at 248.

¶ 88     Since the circuit court's review is limited to the record of the administrative agency in writ of *certiorari* proceedings and actions under the Administrative Review Law, we find that the requirements of section 2-610 of the Code do not apply in this case. Therefore, My Baps is not entitled to judgment on count I of the complaint.

¶ 89     We further determine that My Baps' request to supplement the administrative record was properly denied. My Baps points out that the dispute resolution procedure provided that neither the CPO's determination nor My Baps' continuation with the work under the contracts constituted an admission. Therefore, My Baps was not bound by the CPO's factual determinations. Since the dispute resolution procedure contained no language barring the presentation of additional evidence, My Baps reasons that it was not precluded from offering additional evidence.

¶ 90     "The purpose of the writ [of *certiorari*] is to have the entire record of the inferior tribunal brought before the court to determine, from that record alone, that the inferior tribunal

---

[4] Renamed the Administrative Review Law.

proceeded according to the applicable law." *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 288 Ill. App. 3d 701, 710 (1997). My Baps' argument fails because it agreed to have the CPO's final decision reviewed by a writ of *certiorari*.

¶ 91    Since the circuit court's review was confined to the record before the CPO, the denial of My Baps' request to supplement the record in the circuit court was correct.

¶ 92                          IV. CPO Rhee's Decision

¶ 93    My Baps contends that the proceeding before CPO Rhee violated its rights to due process, and CPO Rhee's decision was against the manifest weight of the evidence.

¶ 94                          A. Due Process

¶ 95                          1. *Standard of Review*

¶ 96    Whether a party has been denied due process presents a question of law which this court reviews *de novo*. *Majid v. Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago*, 2015 IL App (1st) 132182, ¶ 32.

¶ 97                          2. *Discussion*

¶ 98    "[A]n administrative proceeding is governed by the fundamental principles and requirements of due process of law. However, due process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92 (1992). Due process does not require that an administrative proceeding be

conducted in the same manner as a judicial proceeding. *Majid*, 2015 IL App (1st) 132182, ¶ 34. To comport with due process, the parties must be given the opportunity to be heard, the right to cross-examine adverse witnesses and impartiality in ruling on the evidence. *Majid*, 2015 IL App (1st) 132182, ¶ 34. "To succeed on a claim of a due process violation, there must be a showing of prejudice in the proceeding." *Majid*, 2015 IL App (1st) 132182, ¶ 34.

¶ 99                           a. No Opportunity to Be Heard

¶ 100    My Baps argues the dispute resolution process denied it the opportunity to present evidence and to cross-examine witnesses.

¶ 101    My Baps failed to challenge the dispute resolution procedure before the CPO. Failure to raise an issue, even if the issue concerns constitutional due process rights before an administrative body, forfeits the issue on appeal. *Perez v. Illinois Concealed Carry Licensing Review Board*, 2016 IL App (1st) 152087, ¶ 28; see *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 213 (2008) (raising an issue for the first time in the circuit court on administrative review is insufficient since the circuit court is acting as the first-tier court of review).

¶ 102    By entering into the Contacts with the City, My Baps agreed to the dispute resolution procedure provision, which included the right to present evidence and the opportunity to question the opposing party if it requested such a meeting. My Baps did not question or raise any objections to the dispute resolution procedure when it entered into the Contracts with the City. Significantly, My Baps agreed to the Contracts' provision that the CPO could render the final decision solely on the basis of the documentation. A party may not complain of an error to which he consented. See *Perez*, 2016 IL App (1st) 152087, ¶ 28 (the plaintiff

forfeited his claim that he was denied a hearing since he did not challenge the administrative procedure that allowed for his application for a concealed-carry license to be denied without an evidentiary hearing). For the same reason, My Baps cannot claim now that it was prejudiced by a procedure for resolving disputes by which it agreed to be bound.

¶ 103    Forfeiture aside, in an administrative hearing, a party has the right to cross-examine an adverse witness as a matter of fairness. *Morgan v. Department of Financial & Professional Regulation*, 388 Ill. App. 3d 633, 661 (2009). However, an evidentiary hearing is not required in every circumstance. *Peacock v. Board of Trustees of the Police Pension Fund*, 395 Ill. App. 3d 644, 654 (2009). What is required is that "the administrative proceedings employed must provide the party affected with a meaningful procedure to assert his claim prior to the deprivation or impairment of a property right." *Peacock*, 395 Ill. App. 3d at 654 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976)).

¶ 104    The dispute resolution procedure provided an extensive list of material My Baps could submit in support of its claims. The dispute resolution procedure provided that either party could request a meeting to allow the CPO to have a better understanding of the positions of the parties. At the meeting, the parties could have legal representation and question the other party. Even though it disagreed with the basis for the denials of its request for additional payments by Mr. Yonan and Commissioner Klein, My Baps did not take the opportunity to request a meeting so it could better explain to CPO Rhee why it believed it was entitled to the additional payments. Prior to the proceedings before CPO Rhee, the Contracts gave My Baps the right to bring its claim to the attention of the City's resident engineer or project manager and to resolve the claim with him and, failing that, then with the CDOT commissioner. See *Mathews*, 424 U.S. at 343 (the court may consider the fairness and reliability of the existing

pretermination procedures and the probable value, if any, of additional procedural safeguards).

¶ 105       We conclude that My Baps failed to establish that the Contracts' dispute resolution procedure set forth in section XX did not comport with due process.

¶ 106                                   b. No Impartial Fact Finder

¶ 107       My Baps claims that its due process right to an impartial fact finder was violated because CPO Rhee (1) was a fact witness to the dispute since she was copied on the correspondence between CDOT and My Baps, (2) was an employee of the City and appointed by the mayor and could be fired at any time, and (3) was the only person authorized to enter into contracts for the City.

¶ 108       My Baps forfeited its right to object to the CPO's rendering the final binding decision in this case. " 'A claim of disqualifying bias or partiality on the part of a member of the judiciary or an administrative agency must be asserted promptly after knowledge of the alleged disqualification.' " *E&E Hauling, Inc. v. Pollution Control Board*, 107 Ill. 2d 33, 38 (1985) (quoting *Duffield v. Charleston Area Medical Center, Inc.* 503 F.2d 512, 515-16 (4th Cir. 1974), *abrogated on other grounds in Modaber v. Culpeper Memorial Hospital, Inc.*, 674 F.2d 1023 (4th Cir. 1982)). In *E&E Hauling, Inc.*, the supreme court explained as follows:

> "The basis for this [rule] can readily be seen. To allow a party to first seek a ruling in a matter and, upon obtaining an unfavorable one, permit him to assert a claim of bias would be improper." *E&E Hauling, Inc.*, 107 Ill. 2d at 38-39.

Nonetheless, the court declined to apply the forfeiture rule and considered the issue in part because of the likelihood of its recurrence. *E&E Hauling, Inc.*, 107 Ill. 2d at 39. We have no such concern in the present case.

¶ 109    All of the reasons My Baps sets out for establishing the impartiality of the CPO were known or should have been known by My Baps prior to it entering into the Contracts with the City. The appointment of the CPO and the CPO's duties are set forth in the Purchasing Act. See 65 ILSC 5/8-10-15, 8-10-16 (West 2016). Despite this knowledge, My Baps entered into the Contract with the City, agreeing to have the final decision on any claim made by the CPO and never objected to the CPO's role in resolving disputes until after CPO Rhee ruled against it. By its own admission, My Baps was aware that CPO Rhee was copied on the correspondence between CDOT and My Baps. "There must be more than 'the mere possibility of bias or that the decision maker is familiar with the facts of the case.' " *Williams v. Board of Trustees of the Morton Grove Firefighters' Pension Fund*, 398 Ill. App. 3d 680, 693 (2010) (quoting *Danko v. Board of Trustees of the City of Harvey Pension Board*, 240 Ill. App. 3d 633, 641 (1992)).

¶ 110    We conclude that My Baps forfeited any claim of impartiality or bias on the part of the CPO.


¶ 111                                    B. CPO Rhee's Decision

¶ 112    My Baps contends that CPO Rhee's decision was contrary to the law and the evidence. My Baps argues that CPO Rhee erred in determining that its claims were untimely both

30

under the Contracts and the DOPS regulations and that CPO Rhee erred when she determined that My Baps was not owed additional payments under line item 49 of the Contracts.[5]

¶ 113                                    1. *Standard of Review*

¶ 114      The nature and extent of judicial review are virtually the same under the Administrative Review Law and the writ of *certiorari*. *Dubin v. Personnel Board of the City of Chicago*, 128 Ill. 2d 490, 498 (1989); *Sroga*, 359 Ill. App. 3d at 110. We review the decision of the administrative agency, not the determination of the circuit court. *Majid*, 2015 IL App (1st) 132182, ¶ 13.

¶ 115      " 'The applicable standard of review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law.' " *Howe v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2015 IL App (1st) 141350, ¶ 43 (quoting *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005)). "A mixed question of law and fact typically arises when 'the historical facts are not in dispute and the issue is whether the established facts satisfy the statutory standard.' " *Howe*, 2015 IL App (1st) 141350, ¶ 46 (quoting *Village of Hazel Crest v. Illinois Labor Relations Board*, 385 Ill. App. 3d 109, 113 (2008)). Since the pertinent facts are not disputed, the case before us presents mixed questions of fact and law.

¶ 116      Mixed questions of law and fact are subject to the clearly erroneous standard of review. *Howe*, 2015 IL App (1st) 141350, ¶ 46. The administrative agency's decision is clearly

---

[5] On appeal, My Baps does not present a separate argument in support of its claim that it is entitled to additional payment for the paving of the infiltration trenches. For that reason, that issue is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2017). Nonetheless, our analysis of the issue would consider the same factors, resulting in the same determination reached with regard to the line item 49 issue.

erroneous only where the reviewing court, considering the entire record, is left with the definite and firm conviction that a mistake has been made. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001). Under any standard of review, the plaintiff bears the burden of proof. *Cole v. Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago*, 396 Ill. App. 3d 357, 367 (2009).

¶ 117                                              2. *Discussion*

¶ 118                                  a. Timeliness of Request to CPO

¶ 119          My Baps maintains CPO Rhee erred when she determine that it had not complied with the DOPS regulation that the request for dispute resolution must be submitted no later than 120 days after expiration of the Contracts. My Baps points to section 1.2 of the DOPS regulations, which states that the procedures set forth in the DOPS regulations "apply to the resolution of a Contract dispute except to the extent the subject Contract specifies different procedures." My Baps argues that since the Contracts' dispute resolution procedure did not contain or incorporate the 120-day limitation period, the limitation period did not apply to its Contracts with the City. We disagree.

¶ 120          "A court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." *Thompson*, 241 Ill. 2d at 442. "[W]hen parties agree to and insert language into a contract, it is presumed that it was done purposefully, so that the language employed is to be given effect." *Thompson*, 241 Ill. 2d at 442.

¶ 121          My Baps agreed to the dispute resolution procedure in the Contracts, which included the application of the DOPS regulations. In turn, the DOPS regulations provided that they

32

applied to the resolution of a contract dispute "except to the extent" the contract specified a different procedure. The 14-day requirement addressed the time for commencing the initial attempt to resolve the claim prior to referring the claim to the CPO for resolution. The 120-day requirement addressed the time limitation applicable to invoking the dispute resolution procedure before the CPO. As the provisions address different aspects of the dispute resolution procedure, in this respect the Contracts' dispute resolution procedure did not differ from the dispute resolution procedure in the DOPS regulations.

¶ 122    My Baps points out that the 120-day limitation period did not bar its claim because under the Contracts' dispute resolution procedure, the DOPS regulations did not even apply until after the dispute was submitted to the CPO. We disagree.

¶ 123    Section XX(C)(3) of the Contracts provides that "[o]nce the dispute resolution procedures are invoked, the [CPO] will proceed to a final and binding decision under such rules and regulations as he from time to time promulgates." The dispute resolution provision then refers the party to where a copy of the DOPS regulations could be obtained. CPO Rhee's final decision in this case included the finding that My Baps failed to comply with the 120-day requirement in the DOPS regulations.

¶ 124    Finally, My Baps argues that CPO Rhee erred in finding it did not comply with the 120-day requirement because the City provided it with the revised final estimates of quantities for lump sum items and final material deficiency notices on February 21, 2012, and it had seven days to resolve any disputes before the City would proceed with the closeout of the contracts. However, My Baps' argument ignores the fact that DOPS regulations state "expiration of the Contract," not the closeout of the Contract. My Baps never disputed that the Contracts finally "expired" on December 31, 2010.

¶ 125    We conclude that the CPO Rule requiring My Baps to submit its request to the CPO during the contract term or within 120-days of the expiration of the Contracts or waive its opportunity to initiate a dispute resolution applied to the Contracts in this case. As it was undisputed that the Contracts expired on December 31, 2010, My Baps' October 28, 2011, request to CPO Rhee to initiate dispute resolution proceedings was untimely.

¶ 126                              b. Timeliness of Claim Notification

¶ 127    We further determine that CPO Rhee did not err in her determination that My Baps did not establish its compliance with the claim notification requirement. Pursuant to the dispute resolution procedure, in order to seek judicial review of an adverse decision on a claim, My Baps was required to submit a written claim to the City's resident engineer or the project manager within 14 days after the basis of the claim arose.

¶ 128    My Baps maintains that it complied with the procedure by submitting its claim in writing to Mr. Yonan on November 4, 2009, the date it determined it had a basis for a claim. We disagree.

¶ 129    The November 4, 2009, letter did not provide information as to when the claim that My Baps had not been paid under line item 49 arose, information necessary to establish its compliance with the 14-day notification requirement. My Baps' November 4, 2009, letter was directed to Mr. Yonan. It is undisputed that Mr. Yonan was neither the City's resident engineer nor the project manager.

¶ 130    My Baps maintains that it dealt with Mr. Yonan, rather than Mr. Hadzic, the project manager because (1) Mr. Hadzic was the source of the dispute and therefore dealing with him would have been futile and (2) Mr. Yonan was Mr. Hadzic's superior. My Baps further

maintains that, throughout their correspondence, Mr. Yonan never informed My Baps that he was not the proper person to be dealing with under the Contracts' dispute resolution procedure. However, nothing in Mr. Patel's November 4, 2009, letter informed Mr. Yonan that it was submitting a claim under the dispute resolution section of the Contracts and that it could not resolve the claim with Mr. Hadzic as required by the Contracts.

¶ 131     My Baps' reliance on the notice to proceed is misplaced. "When a contract contains both specific and general provisions relating to the same subject, the specific provision controls." *Skidmore v. Throgmorton*, 323 Ill. App. 3d 417, 426 (2001). The notice to proceed directed My Baps to send correspondence to Mr. Yonan. The notice to proceed dealt with general work-related issues, whereas claims and disputes regarding the work were specifically dealt with under the dispute resolution procedure.

¶ 132     Therefore, My Baps failed to comply with the notice of claim procedure required by the dispute resolution procedure as a precondition for judicial review.

¶ 133                               c. Breach of Contract

¶ 134     My Baps contends that the City breached the Contracts by refusing to pay for pavement removal under line item 49. It maintains that the Contracts unambiguously required that the general removal of the existing concrete and asphalt in the alleys fell under line item 49 in the price schedule.

¶ 135     My Baps points out that the general construction requirements mandated the removal of pavement from the alleys. Line item 49 was captioned "Alley Pavement Removal and Subgrade Preparation for Green Alley," and the City's quantity estimates resulted in line item 49 being the largest single cost component of labor under the Contracts. My Baps maintained

35

that its bid for the Contracts was based on it being paid $72 per square foot for removing the existing pavement.

¶ 136    According to Mr. Hadzic's affidavit, after the City accepted My Baps' bid, a preconstruction meeting was held on July 19, 2007. At that meeting, which was attended by Mr. Patel of My Baps, a draft of the schedules of quantities was handed out. The contractors were required to construct the alleys within the limits of the engineer's estimate and any deviations required prior approval of CDOT and detailed documentation from the consultant construction engineer. Quantity estimates were prepared for each alley.

¶ 137    In addition to Mr. Hadzic' affidavit, CPO Rhee reviewed the spreadsheets setting forth the quantity estimates for the alleys. With regard to the alleys constructed by My Baps, the task order for "MA #153" did not contain line item 49 but did contain line item 2—earth excavation. The task order for "MA #154" did not contain a line item 49 but did contain line items 2 and 3—special excavation. The engineer's quantity estimates for "MA #99" showed estimated quantities for earth excavation and special excavation, for "MA #163" estimated quantity for special excavation, for" MA #169" estimated quantities for earth excavation and special excavation, and for "MA #170" estimated quantities for earth excavation and special excavation. There were no quantity estimates for alley pavement removal, requiring payment pursuant to line item 49, in "MA # 99," "MA #163," "MA # 169," or "MA #170."[6] The spreadsheets also showed that between June 25, 2009, and September 28, 2009, My Baps' requests for payment under line item 49 were denied.

¶ 138    My Baps failed to produce any evidence contradicting the estimates in the spreadsheets. As CPO Rhee pointed out, My Baps' argument was that it ought to have been paid under line

_____

[6] What the acronym MA stands for is unclear.

item 49 rather than under line items 2 and 3. However, My Baps never objected to the quantity estimates or requested a change prior to commencing work on the project. The City conceded that My Baps had been paid under line item 49 but that those payments were in error. My Baps failed to present any evidence that it was in fact entitled to those payments.

¶ 139      Moreover, My Baps' continued reliance on the price schedule in the bid proposal is misplaced. In the project information section of the bid package, My Baps was advised as follows:

> "Any quantities shown on the Proposal page are estimated quantities for the initial Term of the Contract and such are for bid canvassing purposes only. The City reserves the right to increase or decrease quantities. The City will be obligated to pay only for those quantities of Work that are preformed and accepted under sub-orders issued by the Department."

¶ 140      CPO Rhee's decision is further supported by evidence that My Baps did not perform the work it seeks payment for in accordance with the requirements of line item 49. The specifications for performing work under line item 49 described the method by which the alley pavement was to be removed and prohibited construction equipment, including passenger vehicles and trucks, from driving on or having direct contact with the exposed subgrade surfaces until such time as the paving portion of the paving operation. Attached to Mr. Hadzic's affidavit were photographs of various alleys My Baps constructed, showing construction equipment being driven over the subgrade during the work.

¶ 141      The record does not support My Baps' claims of error on the part of CPO Rhee in reaching her decision in this case. Having considered the entire record, we are not convinced

that a mistake was made in denying My Baps' request for additional payments under its Contracts with the City.Therefore, CPO Rhee's decision is not clearly erroneous.

¶ 142                                                     CONCLUSION

¶ 143        We confirm the decision of the CPO. We affirm the orders of the circuit court dismissing counts II and III of My Baps' complaint and quashing the writ of *certiorari* requested in count I.


¶ 144        Circuit court affirmed; writ quashed.